ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| PABLO ESTEVEZ GONZALEZ<br><br>    Peticionario<br><br>        v.<br><br>VICENTE FIGUEROA Y OTROS<br><br>    Recurridos | **KLCE202301333** | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de Guayama<br><br>Civil Núm.: GM2020CV00417<br><br>Sobre: Violación de Derechos Civiles |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Bonilla Ortiz y las Juezas Mateu Meléndez

Bonilla Ortiz, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico a 12 de enero de 2024.

Comparece ante este foro el Sr. Pablo Estevez González (señor Estevez o "el peticionario") y nos solicita que revisemos una *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Guayama, la cual fue emitida el 20 de octubre de 2023.[1] En virtud de esta, el foro primario denegó reabrir el caso de autos, puesto que, no ha recibido evidencia de que se ha levantado la paralización del procedimiento de quiebras del Estado Libre Asociado de Puerto Rico (ELA).

Por los fundamentos que se exponen a continuación, **EXPEDIMOS** el recurso de *certiorari* de epígrafe y **REVOCAMOS** el dictamen revisado.

### I.

El 27 de agosto de 2020, -por derecho propio- el señor Estevez presentó una *Demanda Civil* contra el ELA

---

[1] El peticionario alegó que la *Resolución* le fue notificada el 8 de noviembre de 2023. Véase, *Resolución*, anejo II, pág. 2 del apéndice del recurso.

en representación del Departamento de Corrección y Rehabilitación (Departamento), y los siguientes funcionarios: Vicente Figueroa, Santiago Amaro y José A. Colón, entre otros.[2] Mediante esta alegó que, los funcionarios del Departamento lo segregaron, por más de 7 días laborables, en la Institución Guayama 1,000, por una aplicación de la Regla 21 del *Reglamento Disciplinario para la Población Correccional* Núm. 7748 del 23 de septiembre de 2009.[3] Como consecuencia, expresó que sufrió daños, los que le causaron dolores de espalda y piernas, por lo que, solicitó una suma no menor de $40,000.00. El 7 de junio de 2021, presentó una *Demanda Enmendada*, mediante la cual expresó que la parte recurrida lo privó de su libertad por un espacio de 281 días sin el debido proceso de ley. A su vez, que surgieron daños sistémicos adicionales, por lo que, solicitó una suma no menor de $75,000.00.[4]

Luego de varias incidencias procesales, el 15 de abril de 2021, el ELA presentó *Moción en Solicitud de Desestimación*.[5] En esencia, señaló que el foro primario carece de jurisdicción sobre la materia, puesto que no agotó los remedios administrativos. Por consiguiente, solicitaron la desestimación con perjuicio de la demanda.

Por su parte, el 6 de mayo de 2021, -por derecho propio- el señor Estevez presentó su *Oposición a Moción en Solicitud de Desestimación*.[6] En síntesis, alegó que

---

[2] Véase, *Demanda Civil*, entrada núm. 1 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[3] El 8 de noviembre de 2020, se hizo efectivo el Reglamento 9222, el cual deroga el Reglamento Disciplinario para la Población Correccional Núm. 7748 del 23 de septiembre de 2009.
[4] Véase, *Demanda Enmendada*, entrada núm. 26 en SUMAC.
[5] Véase, *Moción en Solicitud de Desestimación*, entrada núm. 24 en SUMAC.
[6] Véase, *Oposición a Moción en Solicitud de Desestimación*, entrada núm. 25 en SUMAC.

el planteamiento sobre agotamiento de remedio es frívolo, puesto que, presentó una demanda solicitando una compensación por daños y perjuicios, y la División de Remedios Administrativos no está facultada por ley para concederlos. A su vez, esbozó que había presentado una *Solicitud de Remedios Administrativos*, Núm. GM1000-370-20, solicitando una compensación y la decisión fue declararse sin jurisdicción. Por lo tanto, sostuvo que podía acudir directamente al foro judicial para reclamar el remedio. El 28 de octubre de 2021, el representante legal del peticionario presentó *Oposición a Moción de Desestimación*.[7]

Evaluadas las mociones de las partes, el 22 de noviembre de 2021, el foro primario notificó una *Resolución*, mediante la cual declaró *No Ha Lugar* la solicitud de desestimación del ELA.[8]

Posteriormente, el ELA presentó *Aviso de Injunction Paralizando la Litigación del Presente Caso y Sobre el Requisito de Presentar una Solicitud de Gastos Administrativos Ante el Tribunal de Título III*.[9] En esencia, expresó lo siguiente:

> Conforme al *Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* ("*Confirmation Order*"), emitido el 18 de enero de 2022, por el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico ("Tribunal de Distrito Federal"), encargado de la restructuración de la deuda del ELA en el caso *In re: Commonwealth of Puerto Rico*, Case No.

---

[7] Véase, *Oposición a Moción de Desestimación*, entrada núm. 35 en SUMAC.
[8] Véase, *Resolución*, entrada núm. 41 en SUMAC.
[9] Véase, *Aviso de Injunction Paralizando la Litigación del Presente Caso y Sobre el Requisito de Presentar una Solicitud de Gastos Administrativos Ante el Tribunal de Título III*, entrada núm. 44 en SUMAC.

17BK3283-LTS, se notifica que existe un *injunction* permanente que está en pleno vigor en los casos como el de epígrafe, presentados antes de la fecha de efectividad del Plan de Ajuste, es decir el 15 de marzo de 2022. Es importante destacar que mediante el *Confirmation Order* se confirmó el Plan de Ajuste de la Deuda ("Plan de Ajuste").

[…]

En consecuencia, este Tribunal no tiene jurisdicción para continuar con el trámite judicial del presente caso, en virtud del *injunction* permanente contemplado en el *Confirmation Order*, emitido por el Tribunal de Distrito Federal encargado de la restructuración de la deuda del ELA bajo el Título III de PROMESA, y el *Notice* presentado por la Junta de Supervisión Fiscal. Así las cosas, en virtud del *Confirmation Order* y el *Notice*, procede la paralización del caso de epígrafe. Este caso se atenderá a través del Tribunal de Distrito Federal a cargo del caso bajo el Título III de PROMESA, conforme al proceso de solicitud de gastos administrativos o "*Administrative Expense Claims*" establecido en el *Confirmation Order* y explicado en el Notice.

Por consiguiente, sostuvo que, si la sentencia resultaba adversa, los fondos pagados al peticionario serían un *liability claim* en su contra. No obstante, añadieron que, el señor Estevez no quedaría desprovisto de un recurso o remedio, toda vez que, de cualificar como tal, proveyeron para una reclamación de gastos administrativos, y de la cual está en tiempo de presentar su acreencia bajo un *Administrative Expense Request*.

En desacuerdo, el 8 de junio de 2022, el peticionario presentó *Oposición a Aviso de Injuction Paralizando Litigación del Presente Caso*.[10] Alegó que, la paralización automática que provee la radicación de una petición bajo dicha Ley sólo aplica a reclamaciones que surjan o casos que se hubiesen presentado antes de

---

[10] Véase, *Oposición a Aviso de Injuction paralizando Litigación del Presente Caso*, entrada núm. 46 en SUMAC.

la radicación de dicha Petición de Quiebras. A su vez, arguyó que la *Orden de Paralización* no aplica a reclamaciones de derechos civiles, donde hay funcionarios públicos que están siendo demandados y responden en su carácter personal.

El 14 de junio de 2022, el ELA presentó su réplica a la oposición del señor Estevez.[11] En síntesis, adujo que los efectos de una paralización automática permanecen hasta que la Corte de Quiebra la deje sin efecto; finalice el caso ante la Corte de Quiebra; o tomen alguna otra acción en el caso de quiebra. Así mismo, añadió que, aun cuando el Plan de Ajuste fue aprobado, no significa que el caso bajo *Puerto Rico Oversight, Management and Economic Stability Act* (PROMESA), 48 USC sec. 2101 *et seq*, haya culminado. Por lo que, el *injuction* tiene el efecto de mantener paralizadas todas las reclamaciones frente al deudor, incluyendo aquellas cuyos hechos fueron posteriores a la petición de quiebra, pero antes de la fecha de la efectividad del Plan, como el caso de autos. Por consiguiente, reiteraron que el foro primario carece de jurisdicción para adjudicar la controversia del caso.

El 25 de agosto de 2022, el foro primario notificó una *Sentencia*.[12] Mediante esta, dispuso que, en el caso de autos, los hechos que dieron lugar a la causa de acción, como la presentación de la demanda ocurrieron luego de presentada la petición de quiebra. Sin embargo, conforme la Sección 922(a)(1) del Código de Quiebras Federal, a dicha reclamación le aplica la paralización automática. A su vez, que la reclamación podría implicar

---

[11] Véase, *Réplica a "Oposición a Aviso de Injuction Paralizando Litigación del Presente Caso"*, entrada núm. 47 en SUMAC.
[12] Véase, *Sentencia*, entrada núm. 50 en SUMAC.

un desembolso por parte del ELA, si el reclamo llegara a prevalecer. Por consiguiente, en casos paralizados por PROMESA, determinó que lo que procedía era archivar administrativamente el asunto hasta tanto una de las partes certifique que se ha levantado la paralización, ya sea por la conclusión del procedimiento de quiebras o mediante una solicitud a esos efectos. Así las cosas, declaró *Con Lugar* la solicitud de paralización presentada por el ELA.

El 26 de julio de 2023, el señor Estevez presentó *Moción Solicitando Relevo de Sentencia y la Reapertura del caso al amparo de la Regla 49.2 de P.C.*[13] Mediante esta, alegó que la *Sentencia* emitida por el foro primario el 25 de agosto de 2022, en el caso de autos es ilegal, y, por lo tanto, nula. Sostuvo que, la paralización de los reclamos contra el ELA, bajo PROMESA, son solo en casos por cobro de dinero, y que, ese no es el caso de autos. Añadió que, el 25 de octubre de 2022, la Honorable Jueza Taylor Swain emitió una *Resolución*, mediante la cual levantó la paralización de todos los casos que están bajo la Ley Núm. 104-1955, *Ley de Reclamaciones y Demandas contra el Estado*, 32 LPRA sec. 3077 *et seq.*, que estén dentro del límite de los $75,000.00 o $150,000.00. Por lo tanto, solicitó la reapertura del caso, puesto que, el estado de derecho vigente así lo permite.

El 11 de octubre de 2023, el ELA presentó *Comparecencia Especial en Cumplimiento de Orden*, en la que planteó que el señor Estevez no está autorizado para representarse por derecho propio, puesto que, tiene

---

[13] *Moción Solicitando Relevo de Sentencia y la Reapertura del caso al amparo de la Regla 49.2 de P.C.*, anejo II, págs. 3-6 del apéndice del recurso. Véase, entrada núm. 62 en SUMAC.

asignado un abogado de oficio, y debe ser a través de su abogado que el peticionario puede comparecer.[14]

Evaluados los argumentos de las partes, el 20 de octubre de 2023, el foro primario notificó la *Resolución* recurrida.[15] Mediante el referido dictamen, determinó que no ha recibido evidencia de que se haya levantado la paralización, por lo que, declaró *No Ha Lugar* a la reapertura del caso de autos.

Inconforme, el 27 de noviembre de 2023, el peticionario presentó el recurso que nos ocupa. Mediante este, adujo que el foro primario cometió el siguiente error:

> Erró el Tribunal de Primera Instancia, Sala Superior de Guayama, al declarar la Moción No Ha Lugar, cuando el estado de derecho cambio.

El 12 de diciembre de 2023, emitimos una *Resolución* concediéndole a la parte recurrida quince (15) días, desde la presentación del recurso para que presentara su oposición.

Sin embargo, el 15 de diciembre de 2023, el ELA presentó *Solicitud de Término Adicional*. El 19 de diciembre de 2023, emitimos una *Resolución*, concediéndole un último término, hasta el 27 de diciembre de 2023 para que presentara su escrito.

En cumplimiento con la referida orden, el 27 de diciembre de 2023, el ELA compareció mediante su *Alegato*. En esencia, solicitó la desestimación del recurso por falta de jurisdicción. Sin embargo, reconoció que el *Order Extending Administrative Claim Bar Date for Certain Parties and Modifying Discharge*

---

[14] Véase, *Comparecencia Especial en Cumplimiento de Orden*, entrada núm. 66 en SUMAC.
[15] *Resolución*, anejo XI, págs. 278-314 del apéndice del recurso.

*Injunction* emitido por el Tribunal de Distrito Federal modificó el alcance del *interdicto permanente* para permitir las litigaciones de casos post-petición bajo la Ley de Pleitos Contra el Estado, y cuyas reclamaciones no excedan los límites estatutarios. Por lo tanto, sostienen que dicha modificación dejó sin efecto la paralización del caso, según dispone la *Orden de Confirmación*, y solicitaron la desestimación del recurso o su devolución al foro primario para la continuación de los procedimientos.

Con el beneficio de la comparecencia de ambas partes, procedemos a disponer del recurso de epígrafe.

**II.**

**-A-**

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita las instancias en que el Tribunal de Apelaciones expedirá un recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia. Es decir, cuando "se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo." Regla 52.1 de Procedimiento Civil, *supra*.

Asimismo, dispone los supuestos en que este foro intermedio podrá revisarlas, con carácter discrecional y a manera de excepción, en las siguientes instancias:

> [C]uando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

Por su parte, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40,

establece los criterios que este foro debe tomar en consideración al atender una solicitud de expedición de este recurso discrecional; a saber, si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho. Así también, debemos tomar en consideración si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por parte del foro primario.

También examinaremos si el asunto planteado exige consideración más detenida a la luz de los autos originales o de alegatos más elaborados, o si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración. Finalmente, debemos analizar si la expedición del auto solicitado evita un fracaso de la justicia. Véase, Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.

**-B-**

El 30 de junio de 2016, entró en vigor la ley denominada *Puerto Rico Oversight, Management, and Econonmic Stability Act* (PROMESA), 48 USC secs. 2101, *et seq.* La referida legislación busca brindar al Estado Libre Asociado de Puerto Rico y sus agencias e instrumentalidades acceso a los procesos judiciales de reestructuración de deuda. Véase, R. Emanuelli Jiménez, *PROMESA*, 1ra ed., Puerto Rico, Ed. SITUM, 2017, pág. 48. En lo pertinente, el Título III de PROMESA permite que ciertas entidades del ELA denominadas "*covered entities*" puedan hacer una petición de quiebra por conducto de la Junta de Supervisión Fiscal.

La Sección 301 de PROMESA, 48 USC sec. 2161, incorporó a dicha ley las disposiciones concernientes a las paralizaciones automáticas del Código de Quiebras de

los Estados Unidos, según recogidas en sus secciones 362(a) y 922(a). Véase, 11 USC secs. 362(a) y 922(a). Al amparo de las precitadas secciones, una vez alguna de las entidades cubiertas hiciera su petición de quiebra ante el Tribunal de los Estados Unidos para el Distrito de Puerto Rico, se activaría una paralización sobre todas las acciones civiles, administrativas o de otra índole que se intentaran iniciar o se hubieran iniciado contra la entidad con anterioridad a la fecha de la petición de quiebra. Dicha paralización beneficiaría únicamente a la entidad que presentó la solicitud de quiebra, salvo que el Tribunal de Distrito entendiera prudente extender la protección a otros codemandados en el pleito.

El 3 de mayo de 2017, el ELA presentó una Petición de Quiebra ante el Tribunal de Distrito de Puerto Rico al amparo del Título III de PROMESA. Como consecuencia, se activó una paralización a partir de la referida fecha sobre todos los procedimientos y causas de acción que surgieron con anterioridad al 3 de mayo de 2017, y en lo que respecta al ELA y a todas las agencias y departamentos por los que este tuviera que responder.

De otra parte, el 18 de enero de 2022, el foro federal, por voz de la Honorable Jueza Laura Taylor Swain, emitió el *Confirmation Order*, el cual entró en vigor el 15 de marzo de 2022. A raíz de dicha determinación, ese foro aprobó el plan de ajuste de la deuda de Puerto Rico, con lo cual concluyó la quiebra del ELA y garantizó, a su vez, el trato justo y equitativo de los acreedores.

En lo que nos compete, el párrafo 59 del *Confirmation Order* tiene el efecto de paralizar las

reclamaciones pasadas, presentes y futuras de todas las entidades frente al deudor, que incluye aquellos hechos que se suscitaron con anterioridad a la petición de quiebra. Este párrafo dispuso un mecanismo de *injuction* permanente que, desde el 15 de marzo de 2022, sustituyó el efecto de la paralización automática que proveían las Secciones 362 y 922 del Código de Quiebras Federal, recogidas en la Sección 301 de PROMESA.

> 59. Injunction on Claims. Except as otherwise expressly provided in section 92.11 of the Plan, this Confirmation Order, or such other Final Order of the Title III Court that is applicable, all Entities who have held, hold, or in the future hold Claims or any other debt or liability that is discharged or released pursuant to section 92.2 of the Plan or who have held, hold, or in the future hold Claims or any other debt or liability discharged or released pursuant to section 92.2 of the Plan are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative, or other proceeding) of any kind on any such Claim or other debt or liability discharged pursuant to the Plan against any of the Released Parties or any of their respective assets or property.
>
> […]

Por igual, el plan de ajuste dispone que el *Confirmation Order* constituirá una determinación judicial a partir de su entrada en vigor.

> 92.2 Discharge and Release of Claims and Causes of Action:
> (a) Except as expressly provided in the Plan or the Confirmation Order, all distributions and rights afforded under the Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims or Causes of Action against the Debtors and Reorganized Debtors that arose, in whole or in part, prior to the Effective Date, relating to the Title III Cases, the Debtors or Reorganized Debtors or any of their respective Assets, property, or interests of any nature whatsoever, including any interest accrued

on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or Causes of Action; provided, however, that, without prejudice to the exculpation rights set forth in Section 92.7 hereof, nothing contained in the Plan or the Confirmation Order is intended, nor shall it be construed, to be a grant of a non-consensual third-party release of the PSA Creditors, AFSCME, and of their respective Related Persons by Creditors of the Debtors. Upon the Effective Date, the Debtors and Reorganized Debtors shall be deemed discharged and released from any and all Claims, Causes of Action and any other debts that arose, in whole or in part, prior to the Effective Date (including prior to the Petition Date), and Claims of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code and PROMESA Section 407, whether or not (a) a proof of claim based upon such Claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) such Claim is allowed under section 502 of the Bankruptcy Code and PROMESA Section 407 (or is otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the Plan.

[…]

In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge and release of all such Claims, Causes of Action or debt of or against the Debtors and the Reorganized Debtors pursuant to sections 524 and 944 of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, and such discharge shall void and extinguish any judgment obtained against the Debtors or Reorganized Debtors and their respective Assets, and property at any time, to the extent such judgment is related to a discharged Claim, debt or liability. As of the Effective Date, and in consideration for the value provided under the Plan, each holder of a Claim in any Class under this Plan shall be and hereby is deemed to release and forever waive and discharge as against the Debtors and Reorganized Debtors, and their respective Assets and property and all such Claims.

De otro lado, el *Notice* presentado el 15 de marzo de 2022, en el procedimiento de quiebra ante el tribunal

federal estableció como fecha límite el 13 de junio de 2022, para que los acreedores presentaran una solicitud de pago por reclamaciones de gastos administrativos. Esta estableció que el acreedor que fallase en presentar dicha solicitud, en o antes de la fecha límite del 13 de junio de 2022, quedaría vedado permanentemente de hacer valer su reclamación de pago contra el deudor.

> 1.51 Administrative Expense Claim: A Claim against the Debtors or their Assets constituting a cost or expense of administration of the Title III Cases asserted or authorized to be asserted, on or prior to the Administrative Claim Bar Date, in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code arising during the period up to and including the Effective Date, and otherwise complying with applicable Puerto Rico law, including, without limitation, subject to the occurrence of the Effective Date, and except as provided in Section 3.5 hereof, Consummation Costs and PSA Restriction Fees; provided, however, that, under no circumstances shall an Administrative Expense Claim include the PBA Administrative Expense Claim.

No obstante, el 9 de septiembre de 2022, la Junta presentó ante el foro federal el escrito *Response of the Financial Oversight and Management Board to Urgent Motion for Extension of Administrative Expense Claim Bar Date and Proper Service of Process Request to be Heard*. Mediante el cual, propuso: (1) extender por noventa días la presentación de la solicitud de gastos administrativos a aquellos reclamantes post petición que pudieran probar que no fueron adecuadamente notificados del Notice; (2) publicar en varios periódicos la notificación de la extensión para presentar la solicitud de gastos administrativos, en español y en inglés, no más tarde de catorce días después de la orden que declarara con lugar la moción; y, (3) excluir a cierto tipo de casos de la presentación de la solicitud de

gastos administrativos; tales como, aquellos donde existieran reclamaciones contra el Gobierno que se encontrasen dentro de los límites estatutarios de $75,000.00 o $150,000.00.

Consecuentemente, el 20 de octubre de 2022, la Jueza Taylor Swain emitió el *Order Extending Administrative Claim Bar Date for Certain Parties and Modifying Discharge Injunction*. En esta, la Corte de Título III extendió hasta el 18 de enero de 2023, la fecha límite para presentar la solicitud de gastos administrativos para aquellos con reclamaciones post petición que no hubieran sido adecuadamente notificados.

Asimismo, la Jueza Taylor Swain modificó el alcance del *Confirmation Order* para disponer que la solicitud de gastos administrativos no sería necesaria para ciertas reclamaciones post petición, entre ellas, los casos de daños instados al amparo de la *Ley de Pleitos contra el Estado*, siempre y cuando la reclamación no excediera los límites estatutarios. En armonía con esa determinación, el *injunction* fue modificado para autorizar la litigación de casos instados al palio de la *Ley de Pleitos contra el Estado*, hasta las etapas apelativas y la etapa de ejecución de sentencia.

Es decir, para que la enmienda al *Confirmation Order* pueda aplicarle a un litigante, será necesario que este alegue que su reclamación contra el Estado no excede los límites estatutarios. Inclusive, la enmienda le exime de presentar la notificación de gastos administrativos, solo si su reclamación no excede los límites estatutarios.

**III.**

En el caso de autos, el señor Estevez nos solicita que revisemos la *Resolución* emitida por el foro primario notificada el 20 de octubre de 2023, mediante la cual denegó la reapertura del caso por no haber recibido evidencia sobre que se haya levantado la paralización, según lo dispuesto en la Sección 362(d) del Código de Quiebras.

Según surge del recurso, y del expediente en el Sistema Unificado de Manejo y Administración de Casos, el peticionario presentó una *Moción Solicitando Relevo de Sentencia y la Reapertura del caso al amparo de la Regla 49.2 de P.C.*, solicitándole al foro primario que reabriera el caso, puesto que el estado de derecho había cambiado, ya que la Jueza Taylor Swain había emitido una resolución levantando la paralización de todos los casos presentados bajo la *Ley de Reclamaciones y Demandas contra el Estado*, siempre y cuando el monto de las reclamaciones estuviera dentro de los límites establecidos por dicha legislación, a saber, $75,000.00 o $150,000.00.

En el momento en que el señor Estevez presentó la moción ante el foro primario, la Jueza Taylor Swain había emitido la orden de la cual podemos destacar dos elementos esenciales a la controversia ante nuestra consideración: (1) la extensión de la fecha para reclamar gastos administrativos será hasta el 18 de enero de 2023, y (2) la inaplicabilidad del *injunction* del *Confirmation Order* a aquellos pleitos que se presenten dentro de las limitaciones estatutarias de la *Ley de Reclamaciones y Demandas contra el Estado*, de 75,000.00 o $150,000.00.

Así las cosas, la compensación solicitada por el señor Estevez es por una suma de $40,000.00, por lo que, la aludida excepción es aplicable a la reclamación incoada por el peticionario. Al aplicar lo anterior a la controversia de autos, la modificación en el *injuction* afectó la paralización del caso, puesto que, la suma solicitada no excede el límite estatutario de $75,000.00. Por consiguiente, no hallamos fundamento en derecho que justifique rehusar la aplicación de la referida modificación que permite que un litigante pueda presentar una causa de acción en contra del ELA.

El ELA reconoce en su escrito que este es el estado de derecho aplicable. Inexplicable e injustificadamente, en lugar de allanarse en lo solicitado por el peticionario, pidió la desestimación del recurso por fallas técnicas en el apéndice del confinado apelante. Como es sabido los confinados no son litigantes con reglas procesales flexibles. Son litigantes como cualquier otro. Para cualquier litigante una alegada falla procesal en completar su apéndice no debe cerrar las puertas de la Justicia a una acción como la presente. Por ello, flaco servicio a la Justicia haría la Oficina del Procurador General al no allanarse a esta petición de *certiorari,* y este Tribunal, igualmente pobre servicio brindaría, si no reconociera el derecho vigente en cuanto a reclamaciones de daños y perjuicios contra el ELA post paralización de la Ley Promesa.

Así pues, concluimos que el error formulado por el señor Estevez fue cometido por el foro primario. Consecuentemente, procede que dicho foro otorgue al peticionario la oportunidad de demostrar si, en efecto,

le asiste razón jurídica en su reclamo. En la eventualidad de que recaiga una sentencia en contra del ELA, la cantidad máxima con la que se puede compensar a los peticionarios por dicha reclamación jamás excederá o será mayor a los límites descritos en la *Ley de Reclamaciones y Demandas contra el Estado*.

**IV.**

Por los fundamentos antes expuestos, **EXPEDIMOS** el auto de *certiorari*, **REVOCAMOS** el dictamen recurrido, se deja sin efecto la paralización de los procedimientos decretada por el Tribunal de Primera Instancia y devolvemos el caso para la continuación de los procedimientos conforme a lo aquí resuelto.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones